DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HEATHER SAWYER CARVAJAL,**
Appellant,

v.

**DANIELLE SANTOS FERRETTI,**
Appellee.

No. 4D2024-3293

[April 29, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Stefanie C. Moon, Judge; L.T. Case No. 062024DR019428AXDVCE.

Heather Sawyer Carvajal, Pompano Beach, pro se.

Hollis Elizabeth Mandell, of The Law Offices of Hollis E. Mandell, Davie, for appellee.

KLINGENSMITH, J.

Appellant ("Girlfriend") seeks review of a final judgment of injunction for protection against stalking entered for Appellee ("Wife"). Because the record does not contain competent, substantial evidence establishing the statutorily required two separate instances of harassment, we reverse.

## I. Background

The parties' dispute arises from a contentious domestic situation. Wife and her husband separated in 2021 and initiated divorce proceedings in 2022. Girlfriend began a relationship with the husband in 2019, prior to the dissolution proceedings.

In October 2024, Wife filed a petition for an injunction for protection against stalking, alleging four categories of conduct occurring between August 2023 and October 2024:

1. **August 2023 social media post:** Girlfriend accused Wife of manipulating others, using her child to spy, and included language Wife perceived as threatening.
2. **February 2024 social media post:** Girlfriend again accused Wife of stalking behavior, tagged Wife's workplace, and warned others about her. Wife testified this led to a meeting with her employer.
3. **October 16, 2024 text message:** Girlfriend contacted Wife regarding a child support payment being sent via Zelle and requested identifying information. Wife provided the information and confirmed receipt through a court-approved communication application.
4. **October 23, 2024 communications:** Following an incident involving Wife's cousin, Girlfriend sent Wife a series of messages calling her derogatory names, accusing her of stalking, and telling her to stay away. When Wife blocked her number, Girlfriend resent the same messages via WhatsApp and email within minutes and referenced possibly appearing at Wife's workplace.

At the hearing, both parties appeared pro se. The trial court found the statutory requirements satisfied and entered a three-year injunction prohibiting Girlfriend from contacting Wife.

## II. Standard of Review

"Trial courts have broad discretion in granting . . . injunctions, and unless a clear abuse of discretion is demonstrated, appellate courts will not disturb the trial court's decision." *Garcia v. Soto*, 337 So. 3d 355, 359 (Fla. 4th DCA 2022) (quoting *DiTanna v. Edwards*, 323 So. 3d 194, 200 (Fla. 4th DCA 2021)).

However, "the question of whether the evidence is legally sufficient to justify imposing an injunction is a question of law reviewed de novo." *Id.* at 359-60 (citation modified). Likewise, "legal sufficiency . . . as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal." *Rosaly v. Konecny*, 346 So. 3d 630, 632 (Fla. 4th DCA 2022) (citation modified).

## III. Governing Law

Section 784.0485(1), Florida Statutes (2024), authorizes injunctions for protection against stalking. "Stalking" occurs when a person "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person." § 784.048(2), Fla. Stat. (2024).

"Harass" means engaging in a course of conduct directed at a specific person that:

1. Causes substantial emotional distress; and
2. Serves no legitimate purpose.

§ 784.048(1), Fla. Stat. (2024).

A "course of conduct" is a pattern of conduct composed of a **series of acts over time evidencing continuity of purpose**.  § 784.048(1)(b), Fla. Stat. (2024).

Thus, to obtain an injunction against "stalking" based on allegations of "harassment," the petitioner must prove  "willful[], malicious[], and repeated[] . . . harass[ment]."   § 784.048(2), Fla. Stat. (2024).  Each instance of "harassment" must be comprised of a "course of conduct" (that is, a pattern of a series of acts over time evidencing continuity of purpose) that both causes substantial emotional distress and serves no legitimate purpose.  § 784.048(1), Fla. Stat. (2024).  Because the "harassment" must be "repeated[]" for an injunction to issue, at least two instances of "harassment" are required.  §§ 784.048(1)-(2), Fla. Stat. (2024); *see Carter v. Malken*, 207 So. 3d 891, 893-94 (Fla. 4th DCA 2017) (citation modified) ("Stalking requires proof of repeated acts . . . . A minimum of two incidents of harassment are required to establish stalking.").  Critically, "[t]wo or more acts that are part of one continuous course of conduct are legally insufficient to qualify as separate instances of harassment." *Garcia*, 337 So. 3d at 360 (quoting *Cash v. Gagnon*, 306 So. 3d 106, 109 (Fla. 4th DCA 2020)).  A qualifying course of conduct requires acts "separated by time or distance."  *Id.*; *see also Eichelberger v. State*, 949 So. 2d 358, 361 (Fla. 2d DCA 2007).

## IV. Analysis

### A. The Record Does Not Establish Two Separate Instances of Harassment

### 1. The October 23 communications constitute a single incident

The October 23, 2024 communications—sent via text message, WhatsApp, and email—were transmitted within minutes, contained substantially identical content, and arose from a single triggering event.

Under Florida law, this constitutes a **single "course of conduct."**  *See Garcia*, 337 So. 3d at 360 (multiple approaches during a single encounter

3

constitute one act); *Cash*, 306 So. 3d at 111; *Eichelberger*, 949 So. 2d at 361 (different forms of contact within a short time frame may constitute one continuous episode). Accordingly, even if any of these communications equated to qualifying incidents, these communications would be considered only one "course of conduct" giving rise to, at most, one instance of "harassment," and not multiple.

## 2. The remaining incidents lack continuity of purpose

The remaining alleged acts do not combine to form a second qualifying instance of "harassment."

The August 2023 and February 2024 social media posts were separated by months and were reactive in nature. The posts do not demonstrate the continuity of purpose required to establish a course of conduct. *See* § 784.048(1)(b), Fla. Stat. (2024).

The October 16, 2024 communication concerned child support and was unrelated in purpose to the earlier posts. Communications about financial support for a child constitute conduct with a legitimate purpose and are analytically distinct from alleged harassment. *See Reid v. Saunders*, 282 So. 3d 151, 152 (Fla. 1st DCA 2019).

Thus, these incidents are discrete and disconnected, not part of a unified course of conduct.

## 3. No legally sufficient second instance exists

The difficulty in this case is not the absence of conflict, but the absence of the kind of **repeated, legally distinct conduct** which section 784.048 requires. The record reflects a relationship marked by hostility, accusation, and reactive communication. But when the allegations are carefully examined through the lens of the governing law, the allegations collapse into **either a single continuous episode or isolated, unrelated events**—neither of which satisfies the requirement of two separate instances of "harassment."

The October 23 communications illustrate the point most clearly. On that date, Girlfriend sent a rapid succession of messages to Wife, first by text and then, after being blocked, through WhatsApp, and shortly thereafter, by email. The messages were substantively identical, sent within minutes of each other, and prompted by the same triggering event involving Wife's cousin. Although transmitted through multiple platforms,

4

the messages were part of a single, uninterrupted effort to convey the same message.

Florida courts have repeatedly rejected the notion that such conduct can be artificially divided into multiple acts. In *Garcia*, we held that multiple encounters during a single evening constituted only one act of harassment, emphasizing that conduct must be meaningfully distinct— not merely repeated in quick succession—to qualify as separate instances. 337 So. 3d at 361. Likewise, in *Cash*, we explained that multiple communications forming one continuous episode cannot be parsed into separate acts to meet the statutory threshold. 306 So. 3d at 111. And in *Eichelberger*, the court recognized that different forms of contact occurring within a short period and reflecting a single purpose constitute one course of conduct, not multiple qualifying incidents. 949 So. 2d at 361. Under these principles, the October 23 barrage of messages, however offensive the Wife may deem the messages to be, amounts to only one incident as a matter of law to be considered under section 784.048.

That leaves the remaining allegations: two social media posts made months apart and a single communication regarding child support. But these events, which also lack the necessary continuity of purpose, likewise do not combine to form a second qualifying instance of harassment for our consideration. Section 784.048 requires a "course of conduct," meaning a pattern of behavior evidencing a sustained objective. § 784.048(1)(b), Fla. Stat. (2024). Here, the August 2023 and February 2024 posts were temporally remote and reactive, each tied to discrete grievances. The October 16 communication, by contrast, concerned the transmission of child support and was wholly unrelated in purpose. Such disconnected acts cannot be stitched together to create a qualifying course of conduct. As *Garcia* explains, section 784.048 requires acts that are not only multiple, but meaningfully related and separated by time or circumstance in a way that demonstrates repetition and not randomness. 337 So. 3d at 360.

What remains, then, is a record showing one short episode of continuous communication, and several isolated incidents spread over more than a year. That is not enough. Section 784.048 demands two separate, legally sufficient instances of "harassment," not one incident supplemented by unrelated or non-qualifying conduct. To hold otherwise would be to dilute the statutory requirement and permit injunctions based on the very type of intermittent, emotionally charged exchanges that Florida courts have repeatedly held fall outside the scope of stalking. Because Wife failed to prove two separate instances of harassment, the injunction cannot stand. *See Garcia*, 337 So. 3d at 360-61.

**B. The Nature of the Conduct Does Not Satisfy the Statutory Definition of Harassment**

Although our conclusion regarding the lack of two qualifying instances of harassment is dispositive for resolving this matter, the communications' nature and alleged effect similarly reinforce the insufficiency of the evidence to satisfy section 784.048's definition of stalking or harassment.

**1. No substantial emotional distress under an objective standard**

"Whether a communication causes substantial emotional distress should be narrowly construed and is governed by the reasonable person standard." *Rosaly*, 346 So. 3d at 633 (quoting *David v. Textor*, 189 So. 3d 871, 875 (Fla. 4th DCA 2016)).

"A reasonable person does not suffer substantial emotional distress easily." *Kaye v. Wilson*, 363 So. 3d 1155, 1159 (Fla. 2d DCA 2023) (citation modified). Rather, the conduct must be "extreme and outrageous." *Rosaly*, 346 So. 3d at 633.

Even accepting Wife's testimony that she felt frightened, lost sleep, and experienced anxiety as a result of Girlfriend's conduct, the law requires more than a subjective reaction. Section 784.048 demands proof of **"substantial emotional distress" measured by an objective, reasonable person standard**, and Florida courts have consistently emphasized that threshold is high. § 784.048(1)(a), Fla. Stat. (2024). This objective standard does not elevate generalized concern or unease into legally sufficient distress. As explained in *Rosaly*, the inquiry is "narrowly construed" and turns not on how this particular petitioner subjectively felt, but on whether a reasonable person in the same circumstances objectively would suffer distress of a truly significant magnitude. 346 So. 3d at 633. In other words, section 784.048 does not protect against all emotional discomfort, but instead targets only conduct so extreme that it would overwhelm an ordinary person. *See Kaye*, 363 So. 3d at 1159 ("'[S]ubstantial emotional distress' connotes an unjustifiable infliction of stress of great proportion, in the nature of fear and concern.") (quoting *Washington v. Brown*, 300 So. 3d 338, 341 (Fla. 2d DCA 2020)).

Measured against that standard, the conduct here does not qualify. The record reflects insults, accusations, and disparaging social media posts, namely being called a "psychopath," a "stalker," or an "abuser," and being criticized publicly. While such statements are undoubtedly offensive and may be embarrassing or upsetting, Florida courts have repeatedly held, as stated above, that this type of speech does not rise to the level of

causing substantial emotional distress.  Similarly, in *Shannon*, the court held that even conduct causing embarrassment in a professional setting does not meet the statutory threshold.  278 So. 3d 173, 175-76 (Fla. 1st DCA 2019).

Nor do the communications here approach the type of "extreme and outrageous" conduct required to satisfy the standard.  Florida courts reserve that label for behavior far more severe—such as repeated, intrusive surveillance or conduct that invades a person's physical sense of security.  *See Rosaly*, 346 So. 3d at 633.  By contrast, the communications here were electronic, intermittent, and easily avoidable—demonstrated by the fact that Wife blocked Girlfriend's number and did not respond to further messages.  Courts have recognized that a reasonable person is expected to possess a degree of resilience in the face of unpleasant communications, particularly where those communications can be ignored or avoided.  "Unpleasant, uncivil, and distasteful communications do not rise to the level required to support a permanent injunction against stalking."  *Id.* (citation modified).

As noted in *Kaye*, a reasonable person does not suffer substantial emotional distress easily; the law requires a showing of something more than worry or discomfort arising from a contentious relationship.  363 So. 3d at 1159.  Section 784.048 is not triggered simply because a party feels uneasy or wishes to prevent further unpleasant interactions.  Mere irritation, annoyance, embarrassment, exasperation, aggravation, and frustration, without more, does not equate to 'substantial emotional distress.'  *See Shannon*, 278 So. 3d at 175-76.

In sum, the record reflects a series of emotionally charged exchanges, but not conduct that would cause a reasonable person to experience the level of distress which section 784.048 requires.  Thus, even accepting Wife's testimony that she felt threatened or lost sleep, the conduct does not meet the objective threshold which section 784.048 requires as a matter of law.  *See Johnstone v. State*, 298 So. 3d 660, 665 (Fla. 4th DCA 2020); *Rosaly*, 346 So. 3d at 633.  Because the alleged behavior amounts, at most, to embarrassment, frustration, and interpersonal conflict, it does not satisfy the objective standard for substantial emotional distress and, therefore, cannot support the issuance of a stalking injunction.

## 2. The conduct served legitimate purposes

Conduct cannot constitute harassment if it serves a legitimate purpose.  § 784.048(1)(a), Fla. Stat (2024).  "Conduct is legitimate when there is a

reason for the conduct other than to harass the victim." *Gonzalez v. Funes*, 300 So. 3d 679, 683 (Fla. 4th DCA 2020) (citation modified).

Here, the record demonstrates that the communications at issue, even if contentious or poorly worded, were not undertaken without purpose. Rather, the communications were rooted in identifiable, legitimate objectives falling outside of section 784.048's definition of "harassment." Section 784.048 requires proof that the conduct "serves no legitimate purpose," and Florida courts have consistently interpreted that limitation broadly, recognizing that human interactions, particularly those arising out of domestic disputes, often carry mixed motives without becoming unlawful. § 784.048(1)(a), Fla. Stat. (2024).

The October 16 communication regarding child support is the clearest example. Girlfriend contacted Wife to facilitate payment of child support on the husband's behalf, requesting the information necessary to complete the transaction. Even if Girlfriend herself had no independent legal obligation to make the payment, the communication plainly related to the financial support of the husband's and Wife's minor child where Girlfriend was involved in paying those financial obligations. Florida courts have held that such communications are inherently legitimate. In *Reid*, for example, the court concluded that messages concerning child support, "although worded harshly," served an underlying legitimate purpose and therefore could not support an injunction. 282 So. 3d at 152. Similarly, in *Gonzalez*, the court recognized that a third party may have a legitimate reason to involve herself in communications where the subject matter concerns a shared financial or relational interest. 300 So. 3d at 683. Here, Girlfriend's involvement in transmitting child support on husband's behalf places her squarely within that principle.

The remaining communications likewise reflect purposes that courts have deemed legitimate, even when expressed in an accusatory or emotional manner. Much of Girlfriend's messaging—particularly the October 23 communications—was directed at telling Wife to cease contact and to stay away following an incident involving Wife's cousin. Florida courts have expressly recognized that such communications serve a lawful function. In *Leach*, the court held that contacting another person to demand that they leave one's relationship or personal affairs alone constitutes a legitimate purpose. 162 So. 3d 1104, 1106 (Fla. 2d DCA 2015). This is notwithstanding the communication's confrontational tone. *See Gonzalez*, 300 So. 3d at 683. The same reasoning applies here. A demand for distance, even if delivered with hostility, is not the kind of purposeless harassment which section 784.048 contemplates.

Importantly, the presence of anger, insult, or even an ulterior motive does not negate legitimacy. As explained in *Gonzalez,* conduct remains legitimate so long as it is driven by some reason other than pure harassment, even if that reason is accompanied by personal animus. 300 So. 3d at 683. Human communications, especially those in strained relationships, are rarely devoid of emotion. The law does not require civility. Rather, the law requires only that the conduct not be wholly without legitimate purpose.

Viewed in this light, the communications at issue—addressing child support, responding to perceived interference, and demanding cessation of contact—fall within the realm of legitimate, even if contentious, interpersonal interaction. Because the communications were not undertaken solely to harass, the communications cannot satisfy the statutory requirement that the conduct serve "no legitimate purpose," and thus cannot support the issuance of an injunction for stalking.

## C. Injunctions Are Not a Remedy for Interpersonal Conflict

The trial court's ruling focused on the parties' contentious relationship and the perceived impropriety of Girlfriend's communications stemming from her involvement with husband and his personal affairs with Wife. Though Florida courts have repeatedly cautioned against this practice in other cases, the message bears repeating: stalking injunctions are not designed to regulate contentious personal disputes.

The law draws a firm—but still misunderstood—line between conduct that is unlawful and conduct that is simply unpleasant, offensive, or emotionally charged. That distinction becomes especially important in cases involving requests for injunctions against stalking, where courts are frequently asked to intervene in deeply personal disputes.

At first glance, it is easy to see why someone embroiled in an acrimonious relationship might turn to the courts for relief. Words are exchanged, accusations are made, reputations feel threatened, and emotions run high. The concern can be real. But the legal question is not whether the conflict is intense, it is whether the conduct meets section 784.048's definition of "stalking." And that definition is intentionally narrow.

Florida courts have long recognized that injunctions are extraordinary remedies, not tools for refereeing personal disputes. In *Logue,* we made this point plainly: injunctions are not available "to stop someone from uttering insults or falsehoods." 297 So. 3d 605, 614 (Fla. 4th DCA 2020).

That principle reflects a broader judicial reluctance to transform everyday conflict into legally actionable wrongdoing. Similarly, in *Klemple*, the court cautioned that injunctions are not meant "to keep the peace between parties who, for whatever reason, are unable to get along." 197 So. 3d 1283, 1286 (Fla. 4th DCA 2016) (citation modified). In other words, the law does not—and cannot—guarantee harmonious relationships.

This restraint is rooted first in section 784.048 itself. Section 784.048 does not prohibit rude behavior, social media arguments, or even harsh personal attacks. Instead, section 784.048 targets a specific kind of conduct: repeated, directed actions that cause 1) **substantial emotional distress,** and 2) serve **no legitimate purpose**. That standard excludes much of what occurs in interpersonal disputes. Arguments between neighbors, former romantic or business partners, disputes involving family members, and emotionally charged communications often arise from recognizable—if imperfect—human motives. Such communications may be regrettable, but are not necessarily unlawful.

Section 784.048's requirement of "substantial emotional distress" further underscores this limitation. Courts evaluate distress using an objective standard, asking how a reasonable person would respond and not how the affected individual before the court subjectively felt. As explained in *Rosaly*, this standard is "narrowly construed." 346 So. 3d at 633. The law assumes that reasonable people can withstand a certain level of friction, insult, and discomfort without requiring judicial intervention. Everyday emotions like embarrassment, anger, and anxiety are part of the human condition. Section 784.048 is concerned only with conduct that is so extreme it would overwhelm an ordinary person, not merely upset them.

Another important limitation is the concept of "legitimate purpose." Human interactions, even contentious ones, often have underlying reasons. A message about child support, a demand to cease contact, or even a heated response to perceived wrongdoing may all serve legitimate ends. As *Gonzalez* recognized, conduct does not lose its legitimacy simply because the conduct is accompanied by anger or hostility. 300 So. 3d at 683. This principle prevents section 784.048 from sweeping too broadly and ensures that courts do not penalize individuals for engaging in ordinary though less-than-perfect communication.

Overlaying all of this is a constitutional concern. Many interpersonal disputes are carried out through speech: texts, emails, social media posts. When a court issues an injunction restricting communication, the court is not merely resolving a dispute—it is limiting expression. As noted in

*DiTanna,* such orders can function as prior restraints on speech, which are viewed with deep skepticism under the First Amendment. 323 So. 3d at 204. If courts were to issue injunctions whenever speech was offensive or upsetting, they would risk suppressing protected expression and overstepping constitutional boundaries.

A practical dimension also exists. Courts are institutions designed to resolve legal disputes, not to manage ongoing personal relationships. If injunctions were available whenever a relationship deteriorated into hostility, the judicial system would become a forum for supervising human behavior at its most personal level. Courts are not in the business of monitoring arguments, policing tone, and adjudicating grievances that, while real, are not legal violations. The law resists this role. Instead, the law intervenes only when conduct crosses a defined threshold into repeated, harmful, and unjustified behavior.

Ultimately, the limitation serves an important purpose. By reserving injunctions for true stalking or harassment—by conduct that is repeated, malicious, and seriously distressing—the law preserves the remedy for those who genuinely need protection. At the same time, the law acknowledges a difficult truth: not all harmful interactions are legally remediable. Some conflicts must be managed outside the courtroom, through personal boundaries, social consequences, or other legal avenues better suited to address the dispute.

While a trial judge may understandably feel compelled to resolve the full scope of a bitter and emotionally charged dispute brought into court, the judge's authority is not guided by sympathy or a desire to restore harmony, but by the limits of the law itself. The judiciary's role is not to mediate every personal conflict or to impose civility where relationships have broken down, but to determine whether the specific legal standards established by the Legislature have been met. Again, as Florida courts have cautioned, injunctions are not a means "to keep the peace between parties who, for whatever reason, are unable to get along," *Klemple,* 197 So. 3d at 1286, nor are injunctions available simply to restrain offensive speech or interpersonal friction. *Logue,* 297 So. 3d at 614 ("[I]njunctions are not available to stop someone from uttering insults or falsehoods."). However compelling the circumstances may appear, a judge must resist the temptation to act beyond those bounds and instead apply the law as written, granting relief only where the statutory requirements are satisfied.

The record here reflects precisely that type of acrimonious dispute. Seciton 784.048, however, imposes a higher threshold that was not met.

Section 784.048 exists to address specific, defined harms and where those harms are not present, an injunction is not the appropriate remedy.

## V. Conclusion

The record reflects a highly acrimonious dispute involving overlapping personal relationships, accusations, and emotionally charged communications. But section 784.048 requires more than hostility, offensiveness, or discomfort. And, because the evidence does not establish two separate instances of "harassment" supported by competent, substantial evidence, the injunction was improperly entered and is hereby reversed.

*Reversed.*

SHAW and LOTT, JJ., concur.

*     *     *

***Not final until disposition of timely-filed motion for rehearing.***